**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CBCInnovis**, *et al.*,

    **Plaintiffs,**

  -v-

**Equifax Information Services LLC,** *et al.*,

    **Defendants.**

Case No. 2:06-cv-654
JUDGE GEORGE C. SMITH
Magistrate Judge Abel

## OPINION AND ORDER

Plaintiffs, CBCInnovis, Inc., and CBC Companies, Inc. (collectively "Plaintiffs" or "CBC"), have brought this action against Defendants, Equifax Information Services, LLC, and Equifax, Inc. (collectively "Defendants" or "Equifax"), alleging claims for violation of the Sherman Act, §§ 1 and 2. Defendants have moved for dismissal of all claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure 12(b)(6) (Doc. 33). In addition, Plaintiffs have filed a Motion for Leave to file a Surreply (Doc. 42), which Defendants oppose. Both motions are fully briefed and are now ripe for adjudication. For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion for Leave to file a Surreply and **GRANTS** Defendants' Motion to Dismiss.

### I. FACTS

Plaintiff CBCInnovis, Inc. is a Pennsylvania corporation with its principal place of business in Columbus, Ohio. (Am. Compl. ¶ 12). Plaintiff CBC Companies, Inc. is an Ohio corporation with its principal place of business in Columbus, Ohio. (*Id.* ¶ 11). Defendants Equifax, Inc., and Equifax

Information Services, LLC are a Georgia corporation and a Georgia limited liability company respectively, both with their principal place of business in Atlanta, Georgia. (*Id.* ¶¶ 13-14).

Plaintiffs are in the business of gathering consumer information from the three nationwide consumer reporting agencies to form a Tri-merged Report, which is then used by mortgage Brokers to market loans on the secondary mortgage market. (*Id.* ¶¶ 28-31). Defendants are one of three nationwide consumer reporting agencies who first organize and store credit information and then sell reports to Resellers and end users, such as the Plaintiffs. (*Id.* ¶ 23). Plaintiffs, along with other Resellers in the industry, have developed Reissues, a way of suitably redistributing the same credit information a broker has received to a lender for a smaller price than having to repurchase individual credit reports from the three nationwide consumer reporting agencies. (*Id.* ¶¶ 32-34). Specifically, Plaintiffs purchase consumer credit reports from Defendants, which they then use to prepare tri-merged reports. Those reports are then sold mainly to mortgage brokers.

CBC and Equifax had been doing business without a contract (a "Reseller Agreement") for the two years prior to CBC's signing of an agreement in December 2006. Initially, Defendants demanded Plaintiffs sign a Reseller Agreement by July 31, 2006. (*Id.* ¶¶ 42-43). Plaintiffs allege that the "Reseller Agreement would impose Equifax's new Reissue Policy upon CBC. Equifax separately informed CBC that if CBC does not enter the Reseller Agreement but continues to purchase credit reports from Equifax for the production of tri-merged reports, Equifax will deem CBC to have acquiesced in Equifax new Reissue Policy." (*Id.* at ¶ 16).

Instead of signing the agreement, Plaintiffs filed the original Complaint on July 31, 2006. (*Id.* ¶ 42). Defendants again attempted to have Plaintiffs sign a new Reseller Agreement, resetting the deadline for December 15, 2006. (*Id.* ¶ 44). Without dismissing the pending action, Plaintiffs

signed the Reseller Agreement on the deadline date of December 15, 2006.  (*Id.*).

Soon after the Original Complaint was filed, Equifax announced they were reducing the Reissue Fee charged for their proprietary information from the previous cost of a new consumer credit report to a fee of $1.05.  (*Id.* ¶ 46).  On April 9, 2007, Equifax announced that as of June 2007, they would be changing the Reissue Fee, this time based on an algorithm, but soon thereafter would be returning to a per-transaction formula. (*Id.* ¶ 47).

Plaintiffs assert that Defendants' acts were intended to have the effect of restraining competition on the whole authentication market, not just on Plaintiffs.  Historically, CBC and other resellers only paid Equifax for consumer credit reports actually purchased.  But under the new Reseller Policy, Equifax requires resellers to agree to pay for a consumer credit report each time the reseller provides a reissue, even though the reissue did not cause the reseller to prepare a new tri-merged repot.

Plaintiffs' Amended and Supplemental Complaint alleges five causes of action. Plaintiffs' first claim is that Equifax is engaged in illegal tying in violation of Sections 1 and 2 of the Sherman Act.  Sections 1 and 2 of the Sherman Act state, in part: "Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal."  15 U.S.C. § 1.  "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony … ."  15 U.S.C. § 2.

Specifically, Plaintiffs allege that Defendants are using their monopoly and market power over the sale of consumer credit reports, a required component in a tri-merged report, to force

Plaintiffs and other resellers to pay for an additional consumer credit report each time they sell a reissue. Plaintiffs' second claim is that Defendants coercively imposed fee constitutes a naked restraint on competition and is an illegal vertical agreement on the authentication market in violation of Section 1 of the Sherman Act. Plaintiffs' third claim asserts that Defendants' prohibition on the resissue of a tri-merged report originally generated by a different reseller is also a naked restraint on competition in the authentication market and is an illegal vertical agreement in violation of Section 1 of the Sherman Act. Plaintiffs' fourth and fifth claims are predicated on the allegation that Defendants have a monopoly on the sale of their consumer credit reports as a required input to preparation of tri-merged reports. More specifically, Count Four alleges that by imposing a charge on resellers each time they sell a reissue, Defendants make reissues more expensive and thus less competitive than the purchase of new tri-merged reports. Count Five alleges that Defendants' prohibition on resissuing tri-merged reports through Global Reissue further stifles competition between reissues and new tri-merged reports.

## II. MOTION TO DISMISS

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the amended complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods.*, 705 F.2d at 155. The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be

dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). Rule 12 (b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, at 296 (2d ed. 1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. *Id.*

Although the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations. *See Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971); *see also Bell Atlantic Corp. v. Twombly*,, 550 U.S. ___, 127 S. Ct. 1955, 1964-65 (2007)[1]. A plaintiff's obligation to provide the "grounds" of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action. *See LULAC v. Bredesen*, 2007 U.S. App. LEXIS 20556 at *3-4 (6th Cir. 2007), *citing Bell Atlantic Corp. v. Twombly*, 127 S. Ct. at 1964-65. The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement

---

[1] In this recent *Bell Atlantic Corp.* case, the United States Supreme Court rejected the language previously used by the Court in *Conley v. Gibson*, providing that "[i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957). *See Bell Atlantic Corp.*, 127 S.Ct. at 1969 (holding that the *Conley* "no set of facts" language "has earned its retirement" and "is best forgotten.").

to relief. *Id.*

Antitrust plaintiffs must allege "[t]he essential elements of a private antitrust claim...in more than vague and conclusory terms" in order to survive a defendant's 12(b)(6) motion. *Foundation for Interior Design Educ. Research v. Savannah College of Art & Design*, 244 F.3d 521, 530 (6th Cir. 2001). Both the United States Supreme Court and the Sixth Circuit have stressed the importance of insisting on specificity in antitrust pleadings to avoid exposing defendants to potentially massive factual discovery costs. *See Twombly*, 127 S. Ct. at 1966-67 ("it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive"; *Foundation for Interior Design*, 244 F.3d at 530 ("the price of entry [into the federal courts], even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome").

### III. DISCUSSION

*A.  Plaintiffs' Motion to File a Surreply*

As a preliminary matter, Plaintiffs have filed a motion for leave to file a surreply memorandum in opposition to Defendants' motion to dismiss (Doc. 42). Defendants oppose the motion and argue that Plaintiffs have not demonstrated good cause to file a surreply. The Court, however, finds that Plaintiffs have demonstrated good cause and will consider the surreply. Defendants rely on *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007), in their reply brief and Plaintiffs correctly point out that this case was decided after they filed their Memorandum in Opposition. Therefore, the Court finds that there is good cause to allow Plaintiffs to file a surreply addressing arguments raised in Defendants' Reply that Plaintiffs did


not have the opportunity to address in their Memorandum in Opposition to Defendants' Motion to Dismiss. Plaintiffs are therefore granted leave to file their surreply, and it will be considered by the Court in ruling on Defendants' Motion to Dismiss.

B.     *Defendants' Motion to Dismiss*

Defendants move to dismiss Plaintiffs' First Amended and Supplemental Complaint (Doc. 33). Defendants assert that Plaintiffs' Complaint should be dismissed because it fails to plead the basic requirements of a proper antitrust claim under either Section 1 or 2 of the Sherman Act. Specifically, Defendants assert three reasons why Plaintiffs' Complaint must be dismissed: (1) it fails to allege any antitrust injury; (2) there is no allegation that Defendants conspired with another entity to engage in unlawful antitrust conduct; and (3) it fails to state any monopolization claim.

Before addressing whether Plaintiffs' Complaint sets forth the elements of a Section 1 or Section 2 Sherman Act claim, the Court must first examine the threshold requirement of standing.[2] *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 484-89 (1977); *see also HyPoint Tech., Inc. v. Hewlett-Packard Co.*, 949 F.2d 874, 877 (6th Cir. 1991). Standing to bring an action under the Sherman Act is conferred by Section 4 of the Clayton Act, which provides, in pertinent part, ". . . any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . ., and shall recover

---

[2] Plaintiffs contest that a determination of whether antitrust injury has been adequately pled should not occur first because such analysis requires understanding the particulars of the antitrust violations alleged. The Court has considered Plaintiffs' arguments, but will follow the instructive case law from the United States Supreme Court and the Sixth Circuit in first addressing the requirement of standing, that is, whether Plaintiffs have sufficiently pled any antitrust injury. Taking into account Plaintiffs' concerns, however, the Court will consider the particulars of their antitrust allegations in making this determination.

threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. §15.

Antitrust standing is more narrow than constitutional standing. "Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 (1983). Further,

> Antitrust standing to sue is at the center of all antitrust law and policy. It is not a mere technicality. It is the glue that cements each suit with the purposes of the antitrust laws, and prevents abuses of those laws. The requirement of antitrust standing ensures that antitrust litigants use the laws to prevent anticompetitive action and makes certain that they will not be able to recover under the antitrust laws when the action challenged would tend to promote competition in the economic sense. Antitrust laws reflect considered policies regulating economic matters. The antitrust standing requirement makes certain that the laws are used only to deal with the economic problems whose solutions these policies were intended to effect.

*HyPoint*, 949 F.2d at 877.

To establish standing, a plaintiff must present a proper claim for antitrust injury as well as demonstrate that plaintiff is the proper party to bring the antitrust suit. *See Re/Max Int'l v. Realty One*, 900 F.Supp. 132, 145 (N.D. Ohio 1995); *see also Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110 (1986) ("A showing of antitrust injury is necessary, but not always sufficient, to establish standing under Section 4 [of the Clayton Act].").

*Brunswick Corporation v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, is one of the seminal cases on the issue of antitrust injury. In *Brunswick*, the plaintiffs, three small bowling alleys, alleged that the acquisition by Brunswick, a "giant" in the bowling industry, of failing bowling alleys in the same markets as the plaintiffs violated Section 7 of the Clayton Act by substantially

lessening competition or creating a monopoly. The theory advanced by the plaintiffs in support of their claim for damages under Section 4 of the Clayton Act was that had Brunswick not acquired the failing bowling alleys, the plaintiffs' profits would have increased. Although it was conceded by Brunswick that a jury could have found the acquisition itself unlawful, the issue posed to the Court was whether the plaintiffs could recover antitrust damages "where the sole injury alleged is that competitors were continued in business, thereby denying [plaintiffs] an anticipated increase in market shares." *Id.* at 484. In answering the question in the negative, the Court rejected the notion that antitrust damages may be recovered solely on the basis that the injury was proximately caused by a violation of the antitrust laws:

> If the acquisitions here were unlawful, it is because they brought a "deep pocket" parent into a market of "pygmies." Yet respondents' injury – the loss of income that would have accrued had the acquired centers gone bankrupt – bears no relationship to the size of either the acquiring company or its competitors. [Plaintiffs] would have suffered the identical "loss" – but no compensable injury – had the acquired centers instead obtained refinancing or been purchased by "shallow pocket" parents. . . . Thus, [plaintiffs'] injury was not of "the type that the statute was intended to forestall," *Wyandotte Co. v. United States*, 389 U.S. 191, 202 (1967).

429 U.S. at 487-88. The Court concluded that although the plaintiffs' damages – loss of profits they would have otherwise received – occurred because of the acquisition by Brunswick, the loss did not occur because of the conduct that made the acquisition illegal under antitrust law. *Id.* at 488-89. Thus, under *Brunswick*, a court must examine "whether the conduct [causing the injury] was anticompetitive, and if it was not anticompetitive, standing is not shown." *HyPoint Tech, Inc.*, 949 F.2d at 877. In other words, standing under the Clayton Act requires more than mere injury proximately caused by a violation of the antitrust laws. *Brunswick*, 429 U.S. at 489. Instead, plaintiffs must prove:

> antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.

*Id.* An "injury, although causally related to an antitrust violation, nevertheless will not qualify as 'antitrust injury' unless it is attributable to an anticompetitive aspect of the practice under scrutiny...." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990).

The antitrust injury requirement "ensures that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place, and it prevents losses that stem from competition from supporting suits by private plaintiffs for either damages or equitable relief." *Id.* at 342. In short, a private plaintiff can recover on an antitrust claim only for a loss which "stems from a competition-reducing aspect or effect of the defendant's behavior." *Id.* at 344. "Individual injury, without accompanying market-wide injury, does not fall within the protections of the Sherman Act." *Car Heating & Cooling, Inc. v. American Standard, Inc.*, 427 F.3d 1008, 1014 (6th Cir. 2005).

Courts emphasize the requirement of antitrust injury to ensure that the antitrust laws are used to promote rather than restrict competition. As the Supreme Court has often made clear: "The purpose of the [Sherman] Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993).

Plaintiffs assert that their Amended Complaint plainly alleges antitrust injury in paragraphs 34, 37, 38, 42, and 47, stating "Defendants conduct has caused and will cause harm to competition in the market for authentication of existing tri-merged reports and antitrust injury

-10-

to CBC by substantially increasing the cost of reissues and decreasing their competitiveness with less desirable new tri-merged reports."  Defendants, however, point out that "noticeably missing are any substantive facts related to the harm suffered, such as the specific increase in cost of reissues, the identities of any specific reseller (other than CBC) or lender that suffered any harm, or whether any reseller (including CBC) has in fact lost a share of reissues because of the Reissue Policy."  (Defs' Reply at 19).  Defendants further assert, and the Court agrees, that the Amended Complaint contains only speculation and no concrete facts as to the injury to competition caused by Equifax's Reissue Policy.  Though Plaintiffs may be correct in asserting that Equifax's Reissue Policy is resulting in "higher prices, lower quality services, and less choice for lenders," there is nothing more to support these naked assertions.  (Pls' Memo. at 27).  Plaintiffs have therefore failed to assert a market-wide injury or specify any competition reducing effect of Defendants' behavior.  Rather, Plaintiffs appear to just be restating the antitrust laws.  The Sixth Circuit has made clear that more than vague and conclusory terms must be asserted to prevent dismissal of the complaint on a 12(b)(6) motion.  *See Foundation for Interior Design Educ. Research v. Savannah College of Art & Design*, 244 F.3d 521, 530 (6th Cir. 2001); *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005); *see also NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007).

Defendants argue that Plaintiffs' real frustration in this case is with the "underwriting requirements of the Government Sponsored Entities Fannie Mae and Freddie Mac, which require Mortgage Brokers and Mortgage Lenders to receive credit information on mortgage applicants from each of the three national credit reporting agencies, and forbid Lenders from relying on the same information received from a Broker."  (Defs' Reply at 16).  Plaintiffs attempt to argue that

these organizations are not "regulatory" agencies. Regardless of how they are labeled, however, an outside source appears to be the cause of the alleged harm to Plaintiffs. It appears that these requirements are imposed on all participants in the mortgage reporting market. Further, it is the requirements set by the Government Sponsored Entities that are the source of Plaintiffs' alleged injury, not any action by the Defendants. Therefore, Plaintiffs have failed to allege an injury of the type that the antitrust laws were designed to remedy.

Furthermore, Plaintiffs appear to be taking issue with adhering to a contractual term that requires it to pay a fee to Equifax each time it sells Equifax's information to a different entity. However, this has nothing to do with antitrust injury or the antitrust laws. These allegations surrounding the contract entered into by Plaintiffs with Defendants do not represent anything more than a mere contract dispute. The allegations do not suggest how Defendants are interfering with the competitive process. Defendants assert, and the Court agrees, that "[t]o the extent the Amended Complaint actually does assert that other reseller are injured by Equifax's fee, the alleged injuries flow either from single lawful contractual term, which does not impair the competitive process, or from the underwriting requirements of Fannie Mae and Freddie Mac, not any anticompetitive conduct of Equifax." (Defs' Mot. at 6).

It is clear that the Sherman Act requires concerted action and does not apply to unilateral conduct. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984). Plaintiff appears to reference the multiple entities of Equifax in attempting to create some concerted conduct, however, a company cannot conspire with its wholly-owned subsidiary for purposes of the Sherman Act. *See Copperweld*, 467 U.S. at 777.

There is a "coercion exception to the concerted-action rule of Section 1 of the Sherman Act, which Plaintiffs may have been attempting to fall into when alleging that its "coerced" vertical agreement with Equifax constitutes the requisite concerted conduct. (Compl. at ¶¶ 67, 70). However, this exception is limited to *per se* claims. *Per se* violations involve "agreements whose nature and necessary effect are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality." *Lie v. St. Joseph's Hosp.*, 964 F.2d 567, 569 (6th Cir. 1992). Considering the Court has already determined that there is no antitrust injury, there cannot be a *per se* violation, as there has been no action by Defendants that is so plainly anticompetitive. Therefore, the Court finds that Plaintiffs have failed to adequately plead any antitrust injury.

Although dismissal may be warranted on other grounds raised by Defendants, the Court will only address the Plaintiffs' lack of standing, which, by itself, is sufficient to require dismissal of all the antitrust claims. Therefore, the Court finds that Plaintiffs have failed to allege any antitrust injury and accordingly any antitrust claims. Plaintiffs' first and second causes of action, violation of sections 1 and 2 of the Sherman Antitrust Act, must therefore be dismissed. Finally, Plaintiffs' third cause of action must also be dismissed as it alleges injury to competition among resellers in violation of both sections 1 and 2 of the Sherman Antitrust Act.

## IV. CONCLUSION

For all of the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss.

The Clerk shall remove Document 33 and Document 42 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**